Teri L. MEADE, Appellant–Respondent,

v.

Paul Eugene LEVETT, Appellee–Petitioner.

No. 50A03–9411–CV–407.

Court of Appeals of Indiana.

Aug. 15, 1996.

K.L. Anderson, Landau, Omahana & Kopka, Merrillville, for appellant–respondent.

Tom A. Black, Plymouth, for appellee–petitioner.

STATON, Judge.

Teri L. Meade ("Meade") appeals the denial of her motion to modify custody and support, the trial court's finding that she was in contempt of court, and its award of damages to her former husband, Paul E. Levett ("Levett").[1] She presents several issues for our review which we consolidate and restate as follows:

 I. Whether the trial court erred in denying Meade's motion for modification of custody.

 II. Whether the trial court erred in excluding a portion of an expert witness' affidavit.

 III. Whether the trial court erred in awarding attorney fees to Levett.

 IV. Whether the trial court erred in ordering Meade to pay a child support arrearage.

Meade then filed a supplemental brief in which she presents three additional issues which we restate as follows:

 V. Whether the trial court had jurisdiction to hear the Motion for a Rule to Show Cause.

 VI. Whether the trial court provided Meade with adequate notice of the contempt hearing.

 VII. Whether the trial court abused its discretion by finding Meade in con-

---

1. We note initially that Meade failed to include a verbatim copy of the judgment in her statement of the case as required by Ind. Appellate Rule 8.3(A)(4). Counsel is admonished to carefully read the Rules of Appellate Procedure prior to commencing any further appeals before this court and to submit briefs which conform to the requirements of those rules.

tempt and awarding damages to Levett.

We affirm.

The facts most favorable to the judgment indicate that Meade and Levett were divorced in September 1991. Levett was granted physical custody of the parties' two children, W.H. and A.H. After Levett remarried, the parties began arguing over custody of and visitation with the children. Meade alleged that Levett and his new wife were teaching the children to hate her and interfering with her visitation rights, while Levett alleged that Meade was harassing his family and manipulating the children. After a hearing which lasted several days, the trial court determined that it was in the best interests of the children to remain in Levett's custody with Meade retaining liberal visitation rights, including daily telephone visits. Meade appealed that decision.

While the appeal was pending, Meade failed to return W.H. to Levett's custody after visitation. Levett filed a petition with the trial court requesting return of the child and Meade filed another emergency petition for modification of custody. After a hearing, the trial court denied Meade's motion and ordered her to return W.H. to Levett by 8:00 a.m. the next day. Rather than complying with the court's order, Meade filed a petition with the Indiana Court of Appeals asking it to stay enforcement of the trial court's order. While the petition was pending in the court of appeals, the trial court ordered Meade to show cause why she should not be found in contempt of court for failing to return W.H. The court of appeals denied Meade's petition for stay and she returned W.H. to Levett. Meanwhile, after several continuances, the trial court held a hearing on the rule to show cause in Meade's absence. She was found to be in contempt and ordered to pay attorney fees and lost wages to Levett as punishment

for her contempt. Meade then obtained permission to join those issues with her pending appeal.

## I.

### Custody

Meade argues that the trial court erred in denying her motion for a change of custody for two reasons. First, she contends that the trial court's findings are not supported by the evidence. Second, she argues that the trial court incorrectly applied the law to the facts before it.

 The court entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). When a party has requested specific findings of fact and conclusions thereon pursuant to T.R. 52(A), the reviewing court utilizes a two-tiered standard of review. *Nill v. Nill,* 584 N.E.2d 602, 604 (Ind.Ct.App.1992), *reh. denied, trans. denied.* We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *De-Haan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *reh. denied, trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

 In hearings to modify custody, the burden is on the petitioner to demonstrate that the existing custody order is unreasonable.[2] *Lamb v. Wenning,* 600 N.E.2d 96, 98

---

2 INDIANA CODE § 31–1–11.5–22(d) which governs custody modifications was amended effective July 1, 1994 to read:

The court may not modify a child custody order unless:

(1) it is in the best interests of the child; and
(2) there is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter.

Under the amended version of the statute, the moving party is no longer required to show that the existing custody order is unreasonable. *Van Schoyck v. Van Schoyck,* 661 N.E.2d 1, 5 (Ind.Ct. App.1996). The amendment applies to cases heard after the effective date of the amendment. *Id.* Here, the hearings on the petition to modify custody commenced on June 1, 1994, prior to the effective date of the amended statute. Thus, we

(Ind.1992). A trial court may modify a custody arrangement only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. *Id.* To determine whether an existing custody order is unreasonable, the court is to consider relevant factors, including changes in the circumstances of both the custodial and noncustodial parents and the resulting and potential advantages and disadvantages to the child. The change in conditions must be judged in the context of the whole environment. *Id.* at 99.

■ Furthermore, cooperation or lack of cooperation is not an appropriate justification for a change in custody. *Pierce v. Pierce,* 620 N.E.2d 726, 730 (Ind.Ct.App. 1993), *trans. denied.* It is not permissible for a court to punish a parent for noncompliance with a custody agreement. *Id.* It is only when the child's welfare is at stake that the court should undertake to modify custody. *Id.* When a parent requests a modification of custody, the substantial change in circumstances cannot be the result of that parent's misconduct with regard to custody.

*Id.* at 731. To allow that would be to reward the parent for misconduct. *Id.*

■ In reviewing the modification decision, even if the evidence might support a different conclusion, we will not substitute our judgment for that of the trial court. *Hunsberger v. Hunsberger,* 653 N.E.2d 118, 122 (Ind.Ct.App.1995), *reh. denied, trans. denied.* We will reverse only if the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Id.* at 121. We will not reverse the trial court's decision on the basis of conflicting evidence alone. *Id.*

■ First, in support of her argument that the findings are not supported by the evidence, Meade points to various evidence which she contends contradicts the trial court's findings of fact. She also complains that the trial court ignores her evidence and relies solely on the evidence presented by Levett and his witnesses. This, however, is simply an invitation to reweigh the evidence and reevaluate the credibility of witnesses which we will not do.[3] *DeHaan, supra.*

review this case under the prior case law which required a showing that the existing custody order be unreasonable.

**3.** Meade also points to several specific findings of fact which she alleges are not supported by the evidence. In each instance, Meade simply ignores any evidence in the record to support the finding and instead argues that no such evidence exists.

1) She argues that there is no evidence to support the trial court's finding that her current employment scenario would require her to be absent from the home for long periods of time and a nanny would care for the children if she were granted custody. Meade testified at the hearing that she left for work about 6:30 a.m., returned home between 7:00 and 7:30 p.m., and that she was in the process of obtaining a babysitter to care for the children while she was at work. This testimony indicates that Meade is away from home approximately fourteen hours a day while the children are with a babysitter.

2) Meade argues that the evidence does not support the trial court's finding that her financial condition is unstable and may deprive the children of some needed activities and care. Her own affidavit testimony indicates that she does not have enough income to cover her monthly expenses. In addition, there was evidence presented that she is unable to pay her child support obligations.

3) She next argues that the trial court's concern over the presence of firearms in Meade's residence and an incident of intoxication and physical violence involving Meade and her boyfriend is not supported by the evidence. She contends that the record is silent as to her intoxication on the night in question. Contrary to her allegations, the record is not silent as to her intoxication. Instead, her boyfriend testified that she had been drinking scotch before the incident. The police officer who responded to Meade's 911 hang-up call that evening testified to the presence of handguns and witnessed a physical altercation between Meade and her boyfriend. Although the children were not present at this time, the trial court's concern was that this type of activity could continue when the children were present.

4) Meade argues that the trial court erred in its summary of the testimony of the expert witnesses. Once again, Meade simply points to the portions of the expert testimony which support her point of view while ignoring those portions which support the trial court's findings. Each of the statements in the trial court's finding can be found in the expert testimony.

5) Finally, Meade argues that the trial court erred in finding that Levett's violations of the custody, visitation and other orders did not rise to the level of contempt because he admitted to violating the court's orders. However, there is

Second, Meade argues that the trial court incorrectly applied the law to the findings of fact. In order to prevail in her motion to modify custody, Meade was required to prove that there had been a change of circumstances making the existing custody arrangement unreasonable. *Lamb, supra.*

Here, the evidence shows that both Meade and Levett have engaged in a pattern of conduct designed to irritate and inconvenience each other. The evidence also indicates that the children are being emotionally harmed by their parents' inability to communicate and maintain a civil relationship. However, the trial court determined from its interviews with the children that they are well-rounded children and that the stability of Levett's home will continue to promote the best interests of the children. As noted above, lack of cooperation alone is not sufficient to justify a modification in custody. *Pierce, supra.* This is especially true when both parties are guilty of not cooperating. Rather, Meade must show a substantial change in circumstances which makes the present custody arrangements unreasonable. *Lamb, supra.* Considering the conflicting evidence presented to the trial court, we cannot say that its determination that it is in the children's best interests for Levett to retain physical custody is clearly against the logic and effect of the facts before it. *Hunsberger, supra.* Accordingly, we conclude that the trial court did not err in denying Meade's motion to modify custody.

## II.

### *Admission of Affidavit Testimony*

Meade next alleges that the trial court erred in excluding a portion of the affidavit of Dr. Sheehan, her expert witness, at the hearing. The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Paullus v. Yarnelle,* 633 N.E.2d 304, 307 (Ind.Ct.App.

1994), *reh. denied, trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Id.* Where evidence is erroneously excluded, the error is harmless if the excluded evidence was otherwise presented to the jury. *Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.,* 590 N.E.2d 1085, 1088 (Ind.Ct.App.1992).

Here, Meade offered Dr. Sheehan's affidavit during rebuttal. The trial court determined that all but one paragraph of the affidavit was rebuttal to Levett's case-in-chief. The remaining paragraph, containing Dr. Sheehan's conclusions regarding custody, was excluded because it was not proper rebuttal evidence. Even if it were error for the trial court to exclude the paragraph from Dr. Sheehan's affidavit, the error was harmless. Dr. Sheehan was permitted to testify several times, including when the affidavit was offered, concerning his opinion that the trial court should grant custody of the children to Meade. The excluded paragraph of the affidavit was merely cumulative of the other evidence and any error in its exclusion was harmless. *Indiana Ins., supra.* Accordingly, we conclude that the trial court did not commit reversible error by refusing to admit the one paragraph of the affidavit.

## III.

### *Attorney Fees*

Meade next argues that the trial court erred in awarding attorney fees to Levett because there is no evidence in the record to support the award.[4] In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney fees. IND.CODE § 31–1–11.5–16(a)

---

evidence in the record showing Levett's explanation of any violations which supports the trial court's determination that the violations resulted from less than acceptable interaction between the parties rather than willful disobedience.

**4.** Meade also argues that the court erred because she should have been awarded attorney fees as

the prevailing party on a motion to compel discovery from Levett. However, Meade does not direct us to any portion in the record where she requested fees and the trial court erroneously denied them. Thus, she has not shown any error.

(1993). In awarding attorney fees, the trial court has broad discretion. *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind.1992). We will only reverse the trial court's decision if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors which bear on the reasonableness of the award. *Id.* In addition, any misconduct on the part of one of the parties which directly results in the other party incurring additional fees may be taken into consideration. *In re the Marriage of Lewis,* 638 N.E.2d 859, 861 (Ind.Ct.App. 1994).

▪▪▪ Here, counsel for Levett stated that he would like to testify to the trial court concerning the amount of attorney fees incurred, which exceeded $9,000. Although he was not placed under oath or cross-examined concerning his testimony, Meade did not object to his testimony. Thus, any error in the manner in which the evidence of the fees was admitted is waived by her failure to object. *Donaldson v. Indianapolis Public Transp. Corp.,* 632 N.E.2d 1167, 1172 (Ind.Ct.App. 1994). The record also contained evidence concerning both Meade's and Levett's respective financial situations and the fact that Meade did not have to incur attorney fees in pursuing her motions. *Selke, supra.* Finally, there is evidence that Meade failed to abide by the trial rules and filed repetitive motions, thus increasing Levett's attorney fees. *Lewis, supra.* All of this evidence supports the trial court's award of attorney fees. Accordingly, we conclude that the award was not an abuse of discretion.

## IV.

### Child Support Arrearage

▪▪▪ Meade next argues that the trial court erred in ordering her to pay a child support arrearage because the support proceedings were bifurcated from the custody proceedings. In addition, she argues that there was no evidence in the record to support the finding that she was in arrears or

the amount of the arrearage. Meade fails to support her argument with authority; accordingly, she has waived this issue. Ind. Appellate Rule 8.3(A)(7); *Huff v. Langman,* 646 N.E.2d 730, 732–33 (Ind.Ct.App.1995).

▪▪▪ Waiver notwithstanding, Meade's argument also fails on the merits. A trial court's finding that a parent is delinquent in payment of child support and that there is no excuse for such failure to pay is a negative judgment. *Holiday v. Holiday,* 644 N.E.2d 880, 882 (Ind.Ct.App.1994). As such, we will reverse that determination only if there is no evidence to support the trial court's conclusion. *Id.*

▪▪▪ Here, the trial court order specifically stated that the only issue which was bifurcated was the issue of the support modification. Levett's motion with respect to child support arrearage was being considered at the hearing. Additionally, Petitioner's Exhibit 2, admitted during Meade's direct examination, is a copy of the child support calculation from the Prosecuting Attorney's office showing that Meade was in arrears approximately $1,200 as of May 12, 1994. Finally, the evidence indicates that Meade was gainfully employed and that there was little evidence to explain her noncompliance with the child support order. As noted above, we will only reverse the trial court's order concerning child support arrearage if there is no evidence in the record to support its conclusions. *Holiday, supra.* Because there is evidence in the record to support the trial court's findings, we conclude that the trial court did not err in finding that Meade was in arrears in the payment of child support and ordering her to pay an additional $25 per week toward that arrearage.

## V.

### Jurisdiction

▪▪▪ In her supplemental brief, Meade contends that the trial court lacked jurisdiction to enter the contempt order because an appeal had been filed with the Indiana Court of Appeals.[5] In support of her argument,

---

5. We note that Levett has not favored us with a

brief in response to Meade's supplemental brief

Meade cites *Chapman v. Chapman*, 512 N.E.2d 414, 419 (Ind.Ct.App.1987), *reh. denied, trans. denied.* However, *Chapman* is not applicable to the present case because it involves a trial court's authority to order the payment of appellate attorney fees after the court of appeals has assumed jurisdiction of the case.[6] *Id.* Instead, even though Levett's motion for the return of W.H. was filed in the same cause number, it was in essence a separate proceeding in which new rights were adjudicated. *See Smoot v. Smoot*, 604 N.E.2d 618, 621 (Ind.Ct.App.1992), *trans. denied* (petition for modification of custody filed while appeal from original dissolution was still pending is separate action which resulted in separate final, appealable order). Because of the distinct nature of the trial court's continuing jurisdiction of dissolution proceedings after the final decree is entered, it is possible for the trial court to exercise jurisdiction over the parties while an appeal is pending provided that the proceedings involve new and distinct issues. *Id.*

Here, while Meade's appeal of the trial court's denial of her motion to modify custody was pending, she violated the existing custody and visitation order by failing to return W.H. after visitation. This created a new cause of action for Levett to pursue, albeit under the same cause number. When Meade failed to abide by the trial court's order that W.H. should be returned to Levett's custody, the trial court had authority to hold a contempt hearing and punish Meade for her actions. Although the trial court erroneously premised its assertion of jurisdiction on its determination that the petition was of an emergency nature, it nonetheless did have jurisdiction. Accordingly, we conclude that the trial court did not err in hearing Levett's petition for return of the minor child or holding contempt proceedings.

in which she raises Issues V–VII. Where only the appellant files a brief, we may reverse the trial court if the appellant makes a *prima facie* showing of error. *Rzeszutek v. Beck*, 649 N.E.2d 673, 676 (Ind.Ct.App.1995), *trans. denied.* This rule "protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for appellee." *Id.*

## VI.

### Notice of Hearing

Meade next argues that the trial court failed to provide her with sufficient notice of the September 8, 1995 contempt hearing. In a contempt proceeding, the trial court must give the defendant notice of the proceeding in order for her to prepare a defense. *Showalter v. Brubaker*, 650 N.E.2d 693, 701 (Ind.Ct.App.1995). Failure to provide notice results in prejudice to the defendant. *Id.*

In *Showalter*, a father filed a contempt petition with the court alleging that the mother had not allowed him visitation on two specific dates. *Id.* at 700. At the hearing, the father was allowed to amend his petition to include twenty-seven additional violations of the visitation order. *Id.* at 701. On appeal, the court held that the mother was not given sufficient notice and time to prepare a defense when she was not told until the hearing that she would have to defend the additional counts. *Id.* This case is distinguishable from Meade's situation.

Here, the evidence indicates that Meade received notice of the hearing both from Levett's counsel and from the court. The contempt hearing had been rescheduled several times due to Meade's failure to appear. She had known of the grounds for the contempt proceedings for several weeks prior to the hearing; thus, she was able to prepare a defense. In addition, the evidence indicates that rescheduling the hearing was Meade's responsibility, and when she failed to do so, Levett's counsel set a new date with the trial court. Although the docket sheet entry showing the new date and notice to counsel was dated September 5, 1995, Levett's counsel introduced into evidence a letter he mailed to Meade on September 1, 1995, in-

6. We also note that there is a split of authority concerning the power of the trial court to enter orders awarding attorney fees in dissolution proceedings during the pendency of an appeal. *See Scheetz v. Scheetz*, 509 N.E.2d 840 (Ind.Ct.App. 1987), *reh. denied*, 522 N.E.2d 919; *Wagner v. Wagner*, 491 N.E.2d 549 (Ind.Ct.App.1986).

forming her of the new date.[7] Accordingly, we conclude that there is evidence in the record to support the trial court's finding that Meade received notice of the hearing and her due process rights had not been violated.

## VII.

### *Contempt*

■ Finally, Meade alleges that the trial court abused its discretion in finding her in contempt of court and awarding attorney fees and lost wages to Levett. The basis of the argument is that there was no evidence in the record evidencing her intent to violate the court's order. To be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. *Hartzell v. Norman T.L.*, 629 N.E.2d 1292, 1294 (Ind.Ct. App.1994), *trans. denied.* When a person fails to abide by the court's order, she bears the burden of showing that the violation was not willful. *Id.* We will only reverse the trial court's judgment of contempt if there is no evidence to support it. *Id.* When the contempt arises from a failure to conform to visitation orders entered in a dissolution proceeding, the child's lack of cooperation is no excuse for non-compliance. *Id.*

■ Once a party is found to be in contempt, monetary damages are permitted to compensate the other party for injuries incurred as a result of the contempt. *Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82, 92 (Ind.Ct.App.1980), *reh. denied.* Elements which can be considered in assessing damages are the inconvenience and frustration

suffered by the complaining party. *United Farm Bureau Mut. Ins. Co. v. Ira*, 577 N.E.2d 588, 595 (Ind.Ct.App.1991), *trans. denied.* The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award. *Id.*

■ Here, Meade violated the trial court's order to return W.H. to her father, and instead, filed a motion with the court of appeals requesting an emergency stay of the trial court's order.[8] She presented no evidence that her failure to abide by the trial court's order was not willful. *Hartzell, supra.* To the contrary, she admits in her brief that she did not comply with the trial court's order because her daughter did not want to return. However, a child's lack of cooperation is not a justification for contempt. *Id.* Because Meade failed to meet her burden of showing that her violation was not willful, we conclude that the trial court did not abuse its discretion in finding her in contempt of court.

■ With regard to the award of attorney fees and lost wages in the contempt proceeding, Levett was entitled to receive compensation for damages he incurred as a result of Meade's failure to comply with the order. *Bottoms, supra.* Levett's counsel testified concerning the amount of time he spent in procuring W.H.'s return and Levett testified concerning the amount of his lost wages. These attorney fees and lost wages are some of the injuries he suffered in forcing Meade to comply with the trial court's order. Accordingly, because the award of attorney fees and lost wages are compensa-

---

**7.** Meade also argues that Levett's counsel fabricated this letter in order to support his contentions that he had provided notice to Meade. In support of her conclusory allegation of misconduct, Meade points to the trial court's docket sheet which indicates that the hearing date was requested on September 5, 1995. However, it is entirely possible that Levett's counsel obtained the September 8 date from the trial calendar and notified Meade of the date prior to officially requesting the hearing from the trial court on September 5. There is no evidence in the record to indicate that Levett's counsel committed fraud on the trial court.

**8.** Meade also argues that there was no evidence presented to the trial court that she failed to

return the child. However, the trial court participated in a telephone conference with Meade's counsel six days after it issued its order. In that conference, Meade's counsel informed the trial court that the child would be returned that night. Obviously, this means that Meade had not yet complied with the order to return the child. In addition, Meade failed to include a copy of the Rule to Show Cause filed by Levett or the trial court's order granting the motion in the record of proceedings. From the text of the contempt hearing, it appears that the trial court had already determined in its order that the child had not been returned.

tion for Levett's injuries and inconvenience, and there is evidence to support the amount awarded, we conclude that the trial court properly awarded these damages to Levett.

Affirmed.

NAJAM and BAKER, JJ., concur.