**Susan Whitcomb SHOWALTER, Appellant–Petitioner,**

v.

**John W. BRUBAKER, Appellee–Respondent.**

No. 41A04–9309–CV–339.

Court of Appeals of Indiana, Fourth District.

April 27, 1995.

James C. Spencer, Indianapolis, for appellant.

James F.T. Sargent, Sargent & Meier, Greenwood, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Susan Whitcomb Showalter (Susan) appeals the trial court's decree in the dissolution of her marriage to Respondent–Appellee John W. Brubaker (John).

We affirm in part and reverse in part.

### ISSUES

The following issues are presented for our review:

1. Whether the trial court abused its discretion in its valuation of the family business.

2. Whether the trial court abused its discretion in denying Susan's post-decree motion for relief from judgment.

3. Whether the trial court abused its discretion in the distribution of the marital property.

4. Whether the trial court abused its discretion in denying maintenance to Susan.

5. Whether the trial court abused its discretion in finding Susan in contempt for violation of the visitation order.

### FACTS AND PROCEDURAL HISTORY

Susan and John were married on May 28, 1972. Their only child, Laura, was born on July 30, 1984.

Susan filed a petition for dissolution of the marriage on April 25, 1989. The trial court entered an order on January 26, 1993. The order dissolved the marriage, divided the marital property, denied maintenance to Susan, and required Susan to pay attorney fees as a result of a finding of contempt.

Susan subsequently filed a "Motion to Correct Errors Or In The Alternative Relief From Judgment Or Order Pursuant To Trial Rule 59 And/Or Trial Rule 60." The trial court denied the motion.

Susan now appeals the trial court's decree and its subsequent denial of her post-decree motion.

### DISCUSSION AND DECISION

I. VALUATION OF THE FAMILY BUSINESS

Susan contends that the trial court erred in its valuation of the family business awarded to John. She argues that the valuation did not comport with the evidence submitted at the dissolution hearing.

The trial court has broad discretion in ascertaining the value of marital property and such valuation will not be disturbed absent an abuse of that discretion. *Neffle v. Neffle* (1985), Ind.App., 483 N.E.2d 767, 770, *reh'g denied, trans. denied.* No abuse of discretion in ascertaining the value of marital property will be found if the valuation is supported by sufficient evidence. *Id.*

In the present case, Susan and John worked together to establish Brubaker/Showalter Designs, a blacksmith business located in Nashville, Indiana. John was primarily involved in production; Susan was involved in marketing and management. The business produced a broad range of items, including decorative door hardware, fireplace tools, light fixtures and candleholders.

During the course of the operation of the business, it became increasingly successful, bringing in gross receipts of $222,662.00 in 1990. As of December 30, 1990, the business was appraised by Max Woodbury, who valued the business at $337,486.00.

In the spring of 1991, Susan and John determined that they were not able to work together, and Susan relinquished control of day-to-day management of the business. In 1991, the absence of Susan's leadership and a change in the market resulted in a substantial drop in gross revenue, down to $143,511.00. As of April 15, 1991, an incomplete appraisal, in the form of a financial state-

ment, valued the business at $252,335.82. As of December 31, 1991, the business was appraised by Larry Nunn at $104,285.00.[1]

In determining the value of the business for purposes of dividing marital property, the trial court rejected Woodbury's appraisal because it did not reflect the 1991 decline in receipts, the change of market away from the style of items produced by Brubaker/Showalter Design, and the lack of continuity of management occasioned by Susan's absence from the business. The trial court further rejected Woodbury's determination that the company "goodwill," in the form of ten copyrights and the business's reputation and contacts, was worth $185,733.00. The trial court also rejected the appraisal of April 15, 1991, because it was incomplete and unreliable. The trial court determined that Nunn's appraisal was more accurate than the others. However, based on other evidence establishing that a vehicle and certain real estate were not assets of the business, the court subtracted their value from Nunn's appraisal to reach a value of $101,452.00.

The trial court did not abuse its discretion in determining that Nunn's appraisal was a more accurate valuation of the business than Woodbury's valuation. The record establishes that the effect of Susan's absence from the business was substantial. The hiring of another manager would not raise revenues because the market for John's designs had almost totally diminished. Furthermore, there was evidence in the record establishing that the copyrights were worth only about $10.00 apiece and that the business's reputation and contacts were useless in a market that no longer placed worth on the business's creations.

■ Susan further argues that the trial court erred in admitting Nunn's appraisal into evidence over her objection. She maintains that the fact that the valuation of production machinery was conducted by a third party who did not testify renders the Nunn valuation inadmissible hearsay.

The Nunn valuation of the business was based on general ledgers, a listing of accounts receivable, inventory, tax returns, and an appraisal of the equipment. The equipment appraisal was done by a third party who did not testify. Nunn's testimony was taken out of order, and his valuation was admitted on the premise that John would verify the appraisal of the equipment in later testimony. John did testify that his appraisal of the production equipment was the same, with one exception, as the third party's appraisal. John's testimony served to independently establish the value of the equipment. It provided verification of the accuracy of the appraisal contained in Nunn's valuation and provided a basis for admission of the valuation. Susan points to testimony in which John disagreed with the third party's appraisal of a phase converter as an indication that the appraisal was not verified. Susan places too much emphasis on John's testimony about the phase converter. His disagreement with the third party's appraisal of this recently damaged machine did not negate his agreement with the remainder of the appraisal. Any question arising from his disagreement goes to weight and credibility, and not to admissibility.

## II. POST–DECREE RELIEF

■ Susan contends that the trial court erred in not granting her post-decree "Motion To Correct Errors Or In The Alternative Relief From Judgment Or Order Pursuant To Trial Rule 59 And/Or Trial Rule 60." She argues that the evidence presented at the hearing on the motion surprised her. She further argues that the decree, as presently written, creates an unjustified unequal distribution of marital property.

Susan first contends that the trial court's decree is in error in valuing the Merrill Lynch CBA Account # 61323475 at $46,-709.00. She argues that the account, which was awarded to her as marital property, should have been valued at $5,114.66, the balance as of April 20, 1989, listed in her Exhibit 22. In support of her argument, she

---

1. John testified that he created works in an art nouveau style which was "cutting edge" in the 1980's. In the 1990's, art nouveau has been "repudiated" by the new art deco style. (R.

1287–1288). The market for John's creations decreased significantly because of the change in the buyer's tastes.

points to her testimony at the post-decree hearing that any amount above the $5,114.66 balance represents non-marital funds "newly discovered" to have been deposited into the account after her dissolution petition was filed. She also claims that she was surprised by John's valuation of the account at $49,-375.00 in his financial statement entered at trial. In the alternative, she argues that, at the most, the account should have been assigned the $34,516.04 value listed in her financial statement. This statement was entered into evidence to show the value of the account on January 31, 1992.[2]

■■■ A review of the denial of a T.R. 60(B) motion is limited to a determination of whether the trial court abused its discretion. *Freels v. Winston* (1991), Ind.App., 579 N.E.2d 132, 135, *reh'g denied, trans. denied.* An abuse of discretion occurs when the trial court's denial is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* A trial court must balance the alleged injustice suffered by the moving party against the interests of the party who prevailed and society's interest in the finality of judgment. *Id.*

■■ In the present case, Susan failed to give the exact subsection under T.R. 60(B) which would allow relief from judgment. Exact categorization of the grounds for relief under T.R. 60(B) is not necessary, however, "except where the category is obvious or where exact choice is necessary to the decision." *Greengard v. Indiana Lawrence Bank* (1990), Ind.App., 556 N.E.2d 1373, 1375. Susan does argue for relief on the basis of newly discovered evidence (T.R. 60(B)(2), surprise (T.R. 60(B)(1)), or "any [other] reason justifying relief" (T.R. 60(B)(8)).

In considering whether the trial court abused its discretion in denying Susan's motion, we must consider the underlying facts. At the dissolution hearing, Susan placed into evidence three different exhibits listing three different balances for the CBA account. Her Exhibit 22 listed the balance at $5,114.66, her financial statement listed the balance at $34,-516.04, and an exhibit attached to her child support worksheet listed the value at the $46,709 balance accepted by the trial court. John also placed into evidence the aforementioned financial statement listing a balance of $49,375.00. Further evidence also indicated that money was withdrawn from various accounts and deposited to other accounts. Susan did not attempt to make any systematic accounting for withdrawals or deposits. Accordingly, the trial court stated in its dissolution decree that Susan compounded accounting problems "with an excessive and systematic commingling of business and personal assets." (R. 294).

It is clear from the evidence and from Susan's testimony at the hearing on her post-decree motion that her T.R. 60(B)(2) "newly discovered" evidence argument is ineffective. As she candidly admitted at the post-decree hearing, she knew the source of the money deposited into the CBA account at the time of the dissolution hearing. Her T.R. 60(B)(1) "surprise" argument is likewise ineffective. She knew at the time of the dissolution hearing that the CBA account balance was a contested matter. She heard John's testimony that the account had a $49,375.00 balance, and even cross-examined him on his assessment of the account. Furthermore, her T.R. 60(B)(8) "fairness" argument is ineffective. Even at the hearing on her motion she presented only her beliefs about the source of deposits in the account; she did not attempt to present even minimal documentation to support her claims.

Under the facts, the trial court did not abuse its discretion in denying Susan's post-decree motion on the issue of the valuation of the CBA account. Susan failed to establish the existence of an injustice outweighing the need for finality of the court's judgment.

---

2. On appeal, Susan wisely does not argue that she is entitled to relief under Ind.Trial Rule 59. At the hearing on the motion, she admitted that she had the information about any deposits made into the CBA account at the time of the original hearing. For purposes of T.R. 59, the recent discovery by a party that certain evidence is pertinent does not amount to newly discovered evidence warranting relief. *See Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 191; *Mid–States Aircraft Engines, Inc. v. Mize Co.* (1984), Ind. App., 467 N.E.2d 1242, 1246.

■ At trial, Susan and John stipulated that they owned property in Brown County which was divided into three tracts of twenty, thirty-two, and sixty acres. They further stipulated that the tracts were worth $57,000, $47,500, and $98,000 respectively. The business was located on the twenty acre tract, a ramshackle cabin occupied by John was located on the thirty-two acre tract, and the family home, which was rented out by Susan at the time of the dissolution hearing, was located on the sixty acre tract. Susan asked the court to award her all three tracts as part of the distribution of marital property; John specifically asked that the court award him the twenty and thirty-two acre tracts. The trial court awarded the tracts containing the cabin and the business to John and the tract containing the family home to Susan.

In her post-decree motion, Susan asked for relief from judgment on the basis that stipulated appraisals were accurate only if all three tracts were awarded as a unit. She stated that she did not anticipate a split award. She also stated that the twenty acre tract contained the utility poles, water, and electric hookups. She further stated that the only access to the sixty acre tract awarded to her was through the twenty acre tract awarded to John. On appeal, Susan requests relief in the form of either an award of the twenty acre tract or in a reappraisal of the sixty acre tract.[3]

■ In assessing whether the trial court abused its discretion in denying Susan's motion for relief, we are mindful that relief is appropriate only upon a showing of exceptional circumstances justifying extraordinary relief. See *Graham v. Schreifer* (1984), Ind. App., 467 N.E.2d 800, 803. Susan must establish a meritorious claim or defense to the judgment. See *Greengard*, 556 N.E.2d at 1376.

After reviewing Susan's motion and testimony, the trial court held:

4. That as a part of this Court's Judgment, the parties were ordered "... to execute any and all documents that are necessary to carry-out the terms of said division of property and debts including,

but not limited to, any deeds, titles and account transfer forms."

\*　\*　\*　\*　\*　\*

6. That the Petitioner [Susan] has failed to demonstrate that she has been denied by the Respondent [John] any necessary easements to the real estate awarded her, as contemplated by the Judgment.

7. That the Petitioner's request for relief from the Judgment is premature, pending her exhaustion of available alternatives as set forth in the existing Decree of Dissolution of Marriage.

8. That the Petitioner's Motion to Correct Errors or Relief from Judgment is therefore DENIED.

(R. 7–8).

Susan presented no evidence of the problems with dividing the property during the extensive dissolution hearing, and she presented no evidence, other than her testimony, during the motion hearing. Furthermore, she presented no evidence that John denied her any easements needed to effectuate the court's judgment. Under these circumstances, we do not find that the trial court's conditional denial of her T.R. 60(B)(8) motion constituted an abuse of discretion.

### III. DISTRIBUTION OF MARITAL PROPERTY

■ Susan contends that the trial court's distribution of marital assets resulted in an unequal balance in John's favor. Specifically, she argues that the trial court failed to (1) include a debt of $1200 in the distribution; (2) properly value a Trust Corp. Bank Account; and (3) properly value household items awarded to her. She also argues that the trial court's award of the money in two separate accounts resulted in a double award as the first account was closed and the proceeds deposited in the second account.

■ IND.CODE 31–1–11.5–11(c) creates a presumption that an equal division of the marital property is just and reasonable. Subject to this statutory presumption, the disposition of marital assets is committed to the sound discretion of the trial court. *Nor-*

**3.** Susan bases her appeal for relief on T.R. 60(B)(8).

*ton v. Norton* (1991), Ind.App., 573 N.E.2d 941, 943. We presume that the trial court followed the law and properly considered all factors in making its decision. *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 301. On review, we may not reweigh the evidence or assess the credibility of witnesses. Rather, we consider only the evidence most favorable to the trial court's disposition. *Grammer v. Grammer* (1991), Ind.App., 566 N.E.2d 1080, 1083. We will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Norton*, 573 N.E.2d at 943.

At trial, Susan testified that she and John had borrowed approximately $1200 from her daughter. She further testified that "I don't believe we ever paid it back, and we agreed at the time we would. We have agreed recently that we would, too." (R. 1070). John did not acknowledge the debt. The evidence supports a finding that no debt existed or that it was paid. We will not reweigh the evidence.

Furthermore, there was evidence to support the trial court's determination with regard to the other alleged errors. The trial court's valuation of the accounts was derived from evidence presented by Susan or John in the dissolution hearing. The valuation of the personal property came from evidence submitted by John. We will not reweigh the evidence or assess credibility to the witnesses.

## IV. SPOUSAL MAINTENANCE

■ Susan contends that the trial court abused its discretion in denying her request for maintenance, in the form of health insurance, until she became employed. She argues that the trial court's denial is not consistent with the evidence presented at the dissolution hearing.

■ A trial court is vested with broad discretion in determining whether an award of spousal maintenance should be made under the facts of the case before it. *Axsom v. Axsom* (1991), Ind.App., 565 N.E.2d 1097, 1099. The trial court abuses its discretion if its decision is clearly against the logic and

effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* "Even if a trial court finds that a spouse's incapacity materially affects her self-supportive ability, a maintenance award is not mandatory." *In re Marriage of Richmond* (1992), Ind.App., 605 N.E.2d 226, 228 (holding that refusal to award maintenance to artist wife who was incapacitated by panic attacks and agoraphobia was not an abuse of discretion when there was evidence showing that she could still support herself).

In the present case, Susan presented evidence that she has Crohn's Disease, an inflammatory bowel disease, which is incurable. She also presented evidence that various injuries and afflictions have caused her to take time off for illness in the past and that she quit her last job because of illness.

The trial court denied Susan's request. In so doing, the court noted that Susan was able to earn substantial income in the years prior to the dissolution of the marriage while suffering with these illnesses and injuries. The court also noted that her health was improving and she had the resources to purchase the insurance. Under these facts, it is apparent that Susan is not incapacitated to the extent that her ability to earn income or to pay for health insurance has been materially affected. The trial court did not abuse its discretion when it denied Susan's request for maintenance.

## V. CONTEMPT

■ Susan contends that the trial court erred in finding her in contempt for violation of the visitation order. She argues that she was not allowed a reasonable opportunity to prepare a defense to the charges.

The record reveals that on December 17, 1991, the trial court entered a visitation order allowing John to have supervised visitation on alternate weekends for four months followed by unsupervised visitation in the months thereafter. On January 15, 1992, John filed a petition requesting the court to find Susan in contempt because she refused to let John have visitation with the child on the first two scheduled visitation dates. The trial court sent notice to Susan instructing

her to show cause as to why she should not be held in contempt.

The contempt matter was not heard until the dissolution hearing was held on October 20, 1992. During the hearing, Susan presented evidence that the child was hospitalized on the first visitation date and her physician ordered bedrest on the second visitation date. John requested that, pursuant to Ind.Trial Rule 15(B), the trial court allow him to amend his petition to show cause to include violations which allegedly occurred after the dates described therein.[4] Susan objected on the basis that she had no notice that she would be required to defend against the allegations and that she could not adequately prepare an instant defense. She further objected on the basis that the "amendment" was actually a new petition. The trial court allowed John to amend his petition to include the alleged additional violations. It also allowed him to put on evidence, over objection, of the violations.

The trial court found Susan in contempt for violation of the visitation order and ordered Susan to pay attorney fees to John in the amount of $500.00. The finding of contempt was based on her failure to make the child available for *unsupervised* visitation. Thus, the finding was based on evidence of violations which occurred after the original petition was filed.

 The broad ability to amend pleadings under T.R. 15(B) is "not without its limitations." *Bahre v. Metropolitan School District* (1980), Ind.App., 400 N.E.2d 197, 200. A party should be able to amend where "the facts are sufficiently pleaded to put the other party on notice as to the evidence to be presented at trial." *Id.* at 201. A party should also be able to amend to "change the theory on which the recovery is based, if that theory is supported by the facts." *Id.*

 In cases of both civil and criminal contempt, the trial court is required to give the contemnor notice which allows adequate time to prepare a defense. *Smith v. Indiana State Board of Health* (1973), 158 Ind.App. 445, 303 N.E.2d 50, 56–57, *reh'g denied, cert. denied* 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974). Failure to give such notice results in prejudice to the defendant.

In the present case, the first notice that Susan received that she would have to answer to twenty-seven additional allegations was at the hearing. It is obvious that she had no time to prepare a defense against the allegations. She was prejudiced by the trial court's grant of John's T.R. 15(B) motion.[5]

### CONCLUSION

We affirm the trial court on its rulings pertinent to the division of property and spousal maintenance. We vacate the trial court's finding of contempt and reverse for proceedings on the contempt issue not inconsistent with this opinion.

Affirmed in part and reversed in part.

CHEZEM and NAJAM, JJ., concur.

---

4. T.R. 15(B) provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

5. John maintains that the mention of the two visitation violations in his petition to show cause was sufficient notice that she would have to answer for subsequent violations at the hearing. We can think of no reason why Susan should have anticipated the need to defend against these additional allegations. The allegations, in effect, constituted a new petition.