**Rev. Lord M. HUNT and Faith Temple Ministries, Inc., Plaintiffs,**

v.

**ELKHART COUNTY SHERIFF, et al., Defendants.**

No. 3:98–CV–0423 RM.

United States District Court, N.D. Indiana, South Bend Division.

April 3, 2000.

David W. Albert, South Bend, IN, for plaintiffs.

Michael F. DeBoni, Bodie J. Stegelmann, John D. Ulmer, Yoder, Ainlay, Ulmer and Buckingham, Goshen, IN, for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This matter comes before the court on: (1) the motion of plaintiffs Reverend Lord M. Hunt and Faith Temple Ministries, Inc. for partial summary judgment as to the liability of the state-action defendants; (2) the motion for summary judgment of defendants Sheriff of Elkhart County, John Does one and two, Corporal Jeremy Bigler, Corporal Richard Matteson, Officer J.W. Howard, and one or more jail commanders; (3) the motion of plaintiffs Reverend Lord M. Hunt and Faith Temple Ministries, Inc. for partial summary judgment as to the liability of Dr. David L. Cripe; (4) the motion for summary judgment of defendant Dr. Cripe; (5) the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. to qualify Joseph Molnar as an expert; (6) the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. to qualify Richard Zimmerman as an expert; (7) defendants' motion to bar the expert testimony of Richard Zimmerman and Joseph Molnar; and (8) plaintiffs' motion for relief from scheduling order as to trial date and preparation.

### I.

A lease agreement between tenant Rena Brooks, her co-signor Lord M. Hunt, and landlord David Cripe became the subject

of a small claims proceeding filed on May 13, 1991 in Elkhart Superior Court No. 4 (Cause No. 20E02–9105–SC–00466). As part of those proceedings and after judgment was entered for Dr. Cripe, a body attachment for Rev. Hunt was issued on August 24, 1992 for contempt, and bond was set at $365.00. On December 4, 1995, Dr. Cripe signed an acknowledgment stating that a $265.00 check received from Christine Hunt constituted payment in full for prior debt. Dr. Cripe provided no notice of the acknowledgment to the Superior Court, so the body attachment was not vacated.

Rev. Hunt was stopped for speeding in Tipton County on the Saturday of Labor Day weekend 1996. He was taken into custody on the body attachment and was transported to the Tipton County Jail. The Tipton County Sheriff's Department contacted the Elkhart County Sheriff's Department and was told not to release Rev. Hunt. The Elkhart County Sheriff's Department asked that Rev. Hunt be held in Tipton County until Monday (Labor Day), when the Elkhart Department would send personnel to pick him up.

During the course of the weekend, several people tried to pay the cash bond set for the body attachment, but the Elkhart County Sheriff's Department refused to accept the payment until Rev. Hunt was transported to Elkhart County. On Labor Day Monday, Rev. Hunt was transported to Elkhart County, the $365.00 bond was posted, and Rev. Hunt was released. Rev. Hunt's total period of confinement lasted about fifty hours, from about 3:00 p.m. on Saturday until just before 5:00 p.m. on Monday. Elkhart Superior Court No. 4 ordered the underlying action "released and satisfied" on September 4, 1996.

## II.

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." To defeat a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence, nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1087–88 (7th Cir.2000).

### A.

Several matters can be disposed of with relative ease before turning to the challenging issue posed by Rev. Hunt's experience. Rev. Hunt is not the only plaintiff in this suit; he is joined in that capacity by Faith Ministries, Inc., the organization for which Rev. Hunt ordinarily preached on Sundays. Faith Ministries' claim arises from its having been deprived of its preacher on the Sunday morning of Rev. Hunt's incarceration. Rev. Hunt and Faith Ministries sue a number of defendants. They sue the Elkhart County Sheriff's Office, Elkhart County Sheriff Corporals Jeremy Bigler and Richard Matteson, and Dr. Cripe.

A review of the plaintiffs' memoranda on the cross-motions concerning Dr. Cripe discloses no federal claim against Dr. Cripe. *See Sanders v. Village of Dixmoor, Illinois,* 178 F.3d 869, 870 (7th Cir.1999) (summary judgment opponent must inform court of theories). The plaintiffs offer no argument that Dr. Cripe had any duty under federal law to release his small claims judgment, or to assure that the

body attachment was vacated once he had been paid. The complaint sought to state a claim under 42 U.S.C. § 1985 for a conspiracy to deprive Rev. Hunt (and, apparently, Faith Ministries) of federal constitutional rights, but the plaintiffs' summary judgment memoranda concede that no claim under § 1985 can be supported on this record. Indeed, undisputed evidence in the summary judgment record indicates that upon learning on the Labor Day weekend that Rev. Hunt was in police custody, Dr. Cripe phoned the Elkhart County Sheriff's Department to request Rev. Hunt's release. Like other callers that weekend, Dr. Cripe was unsuccessful.

The plaintiffs vigorously assert that Dr. Cripe had a duty under Indiana law to file with the court a release of the judgment. The plaintiffs cite a statute to that effect, IND. CODE § 32–8–1–1(b), and also seem to argue that a similar duty exists under Indiana common law, though they cite no case law that directly supports that proposition. The plaintiffs dispute the defendants' contention that the statutory scheme provides an exclusive remedy—specifically, a penalty of $500.00, IND. CODE § 32–8–1–2—for a failure to file a release. No reported Indiana case addresses the exclusivity of the statutory remedy for breach of the statutory duty to file a release of judgment with the court that entered the judgment, and no reported Indiana case addresses the existence of any common law remedy for failure to file a release of judgment.

■■■ Rev. Hunt and Dr. Cripe appear to be, and are not alleged to be anything other than, Indiana citizens. Faith Ministries is identified as an Indiana corporation, though the amended complaint does not allege its principal place of business. Federal courts ordinarily do not have the power to hear cases between Indiana citizens based on Indiana law. In cases such as this, in which the court has jurisdiction over a claim based on federal law, a federal district court has discretionary jurisdiction under 28 U.S.C. § 1367 over state law claims between citizens of common state citizenship. Whether the court has supplemental jurisdiction over the claims against a debatable point, because it is not altogether clear that the claim against Dr. Cripe bears sufficient relationship to the claims against Elkhart County and its officers. See 28 U.S.C. § 1367(b). In any event, however, 28 U.S.C. § 1367(c)(1) authorizes the court to "decline to exercise supplemental jurisdiction [if] the claim raises a novel or complex issue of State law ...." This is such a case; the principle legal issues with respect to Dr. Cripe both are issues of first impression. The court declines to exercise jurisdiction over those claims.

### B.

■■■ Just as the summary judgment briefs identify no federal claim against Dr. Cripe, neither do they identify a federal right of Faith Ministries that might have been violated. Faith Ministries argues that under Indiana law, one who tortiously injures a key person to some business thereby becomes liable to the business for damages caused by loss of the key person. Setting aside whether Indiana law so provides, Faith Ministries identifies no federal source for such a theory. Except under survivor and representative theories, a plaintiff under 42 U.S.C. § 1983 cannot recover damages on the ground that someone else's federal statutory or constitutional right was violated. See Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Faith Ministries contends that Rev. Hunt's detention violated Rev. Hunt's due process rights and that Faith Ministries was injured as a result; for purposes of deciding the Faith Ministries claim, the court can assume those propositions are true. But no argument is made, much less support cited for the proposition, that the detention of Rev. Hunt violated Faith Ministries's substantive due process rights.

Faith Ministries's claim under Indiana law cannot be described as anything less than novel. As support for its theory,

Faith Ministries cites *Citizens' Street Ry. Co. v. Twiname,* 121 Ind. 375, 23 N.E. 159 (1890), a case that considered the then-new statute allowing married women to earn wages in their own right. In *Citizens' Street Ry.,* the defendant had injured the plaintiff's wife, who ran the plaintiff's millinery business; as a result, the plaintiff's business lost the then-substantial sum of $2,000.00. The defendant argued that any right to sue lay with the wife, who had been injured, rather than with the plaintiff husband. The Indiana Supreme Court, plainly trying to find its way through the modern concepts embodied in the new statute, decided that the statute only addressed a married woman's right to earn wages from a third party, and did not affect the traditional relationship between husband and wife—leaving the husband as a proper (and perhaps only) party to sue for the injury to the wife to whom he paid wages.

■ When applying state law, it is the task of a federal district court to try to predict how the highest court in the state would decide an issue. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir.1999). It seems to this court most unlikely that the Indiana Supreme Court in the year 2000 would use *Citizens' Street Ry. Co. v. Twiname* as a springboard to any holding, much less to the holding that Faith Ministries seeks—that one who tortiously injures a person is liable not only to the injured person, but to all those who have important contractual relationships with the injured person. Notwithstanding that (as Faith Ministries points out) *Citizens' Street Ry. Co. v. Twiname* has not been overruled in the past 110 years, neither has it been used to engender such a rule of law despite the many people who have been tortiously injured in Indiana since 1890. This is not a novel question of the sort the court should leave to the Indiana courts under 28 U.S.C. § 1367(c)(1). This is the type of claim that would require the court to create new Indiana law. The Seventh Circuit

has explained that those who seek to change state law should not file their claims in federal court. *See Great Central Ins. Co. v. Insurance Services Office, Inc.,* 74 F.3d 778, 786 (7th Cir.1996). Summary judgment for the defendants is proper on Faith Ministries's claims against the Elkhart County defendants.

## C.

■ This leaves Rev. Hunt's federal and state law claims against the Elkhart County defendants. Inquiry begins with the federal claim. The Fourth and Eighth Amendments to the United States Constitution do not provide an adequate basis for the plaintiff's claim under 42 U.S.C. § 1983. The Fourth Amendment " 'governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause.' " *Armstrong v. Squadrito,* 152 F.3d 564, 569 (7th Cir.1998) (*citing Villanova v. Abrams,* 972 F.2d 792, 797 (7th Cir.1992)). Because Rev. Hunt's arrest took place pursuant to a bench warrant, this case concerns detention after a judicial determination of sufficient cause, and the Fourth Amendment is not implicated. *Armstrong,* 152 F.3d at 570.

■ Similarly, Rev. Hunt cannot maintain an Eighth Amendment claim because "that amendment applies only to a convicted prisoner rather than a pretrial detainee whose rights receive the protection of due process." *Id.* (*citing Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Duran v. Elrod,* 542 F.2d 998, 999–1000 (7th Cir.1976)). As in *Armstrong,* Rev. Hunt's detention occurred before a court even considered whether to sanction him for contempt, so whether imprisonment for contempt in Indiana invokes the Eighth Amendment is a matter that needn't be addressed. *Id.* As noted, Rev.

Hunt conceded that he has no claim under 42 U.S.C. § 1985.

■ The only remaining rights, privileges, or immunities that Rev. Hunt seems to assert were violated by the defendants are those secured by the Due Process Clause of the Fourteenth Amendment,"where the question is whether an executive abuse of power shocks the conscience." *Armstrong v. Squadrito,* 152 F.3d at 570 (*citing County of Sacramento v. Lewis,* 523 U.S. 833, 846–847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). To survive summary judgment on a § 1983 claim, Rev. Hunt "must present facts to establish that the defendants intentionally or recklessly deprived him of a constitutional right." [1] 152 F.3d at 570. "This inquiry involves two separate questions: (1) Did the defendants violate a constitutional right? and (2) Did the defendants act with sufficient culpability?" *Id.* "[A]n investigation into substantive due process involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements: " 'That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in light of other considerations, fall short of such denial.' " *Id.* (*quoting County of Sacramento v. Lewis,* 523 U.S. at 850, 118 S.Ct. 1708 (*quoting Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942))).

Much, but certainly not all, of the heavy lifting already has been done. In *Armstrong,* the court broke the question of whether the defendants violated substantive due process into three separate inquiries. First, the court looked at whether the "Due Process Clause protects against an extended detention, without an appearance before a magistrate, following an arrest pursuant to valid bodily attachment," a question of law. 152 F.3d at 570–71.

The court then examined whether the defendants' conduct offended the standards of substantive due process—an issue for the fact finder as the "factual mainstay of actions under § 1983". *Id.* at 577. Finally, the court considered whether the totality of the circumstances "shocks the conscience"—another question of law. *Id.*

Rev. Hunt does not seem to .question the validity of the underlying warrant in and of itself or his initial detention. He claims that he should have been able immediately to post bond or appear before a judge. The first issue, then, is whether the Due Process Clause protects against a detention, without an appearance before a magistrate, following an arrest pursuant to valid body attachment warrant. The nature of an Indiana body-attachment warrant is critical to the issue. The Seventh Circuit studied the topic in *Armstrong v. Squadrito,* where the § 1983 plaintiff had been detained pursuant to an Indiana civil warrant:

> [A] body attachment writ for contempt constitutes a civil warrant. On the other hand, the Indiana courts have said that the body attachment warrant shares certain attributes with its criminal cousin—for instance, a civil warrant, like a criminal warrant, "authorizes the sheriff to take a person into custody and provides for bail." *Casselman [v. State],* 472 N.E.2d [1310,] 1312 n. 3 [ (Ind.Ct.App.1985)]. In addition to these shared characteristics, several other considerations make us realize that the ostensibly clear demarcation line between [a] civil arrest warrant and a criminal warrant is, instead, a far more imprecise boundary. For instance, Indiana's indirect contempt statutes repeatedly refer to determinations of "guilt" for contempt. The laws refer to an alleged contemnor as a "defendant." The statutes mention that the court can

---

**1.** A § 1983 plaintiff "must also show that the defendants acted under color of state law and that their actions constituted the legal cause of [plaintiffs'] damages," but the defendants do not appear to contest .plaintiff's proof on these elements. *Armstrong v. Squadrito,* 152 F.3d at 570.

"acquit" the alleged contemnor. The requirements and purposes for the rule to show cause closely resemble a criminal indictment. The contempt laws allow the court to "punish" the contemnor. All of these admittedly superficial, and mainly semantic, particulars make [a civil-warrant detainee's] case appear closer to a criminal prosecution than it might seem at first blush.

Not only does the contempt statute contain the language of criminal law, the Indiana courts have interpreted the law to provide the sort of due process protections normally associated with a criminal proceeding. This principle is most powerfully stated in *Mitchell v. Stevenson*, 677 N.E.2d 551 (Ind.Ct.App. 1997), where the court explained that: "The disobedience of a court order may be categorized as either civil contempt or criminal contempt. Whether the conduct is categorized as civil contempt or criminal, the trial court must still provide the defendant the same statutorily prescribed due process protections." *Id.* at 560 (citations omitted). In other words, as far as the Indiana courts are concerned, [a civil-warrant detainee] was due the same process regardless of whether the sheriff arrested him under a warrant for criminal or civil contempt. In *Showalter v. Brubaker*, 650 N.E.2d 693 (Ind.Ct.App. 1995), the court made a similar point by explaining that: "In cases of both civil and criminal contempt, the trial court is required to give the contemnor notice which allows adequate time to prepare a defense. Failure to give such notice results in prejudice to the defendant." *Id.* at 701 (citations omitted). 152 F.3d at 574–75. Most compelling to the *Armstrong* court was that the Indiana contempt statutes provide for fines and imprisonment. "Thus, even if Armstrong cannot avail himself of the protections of the Fifth, Sixth, and Eighth Amendments to defend against a charge of civil contempt, he faces the same sort of ultimate sanction as if he defended himself from a

criminal charge-the loss of liberty. This is atypical of a civil proceeding." *Id.* at 575. Comparison of civil and criminal warrants led the court to conclude that the substantive due process analysis articulated in *Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985), a case involving an detention pursuant to a criminal warrant, applied with equal force to the facts of *Armstrong*. 152 F.3d at 576.

In *Coleman v. Frantz*, an Indiana sheriff arrested Mr. Coleman pursuant to a valid criminal bench warrant and held him for eighteen days. After Mr. Coleman protested his innocence and repeatedly requested to go to court, the prosecutor's office ultimately dropped the charges. The court found that the sheriff's conduct violated substantive due process, but held that the sheriff was protected by qualified immunity.

The *Coleman* court extensively examined the Supreme Court's analysis in *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), where the Court held that a four-day detention after a mistaken arrest pursuant to a valid criminal warrant over a New Year's weekend did not amount to a deprivation of liberty without due process of law. In *Baker*, the Supreme Court noted that a "detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.' But we are quite certain that a detention of three days over a New Year's weekend could not amount to such a deprivation." 433 U.S. at 145, 97 S.Ct. 2532.

■ Returning to Rev. Hunt's arrest pursuant to an Indiana civil warrant, the plaintiffs point to the Indiana statutory procedures requiring that the sheriff "shall immediately: (1) serve the writ; and (2) take the person into custody" and "immediately take the person before the court which issued the writ." IND. CODE § 34–4–

9–2.1(c)–(d).[2] Indiana's procedural statutes are not a source of constitutional entitlements. *See Smith v. Shettle,* 946 F.2d 1250, 1254 (7th Cir.1991) (*citing Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982); *Woods v. Thieret,* 903 F.2d 1080, 1082 (7th Cir.1990); *Kellas v. Lane,* 923 F.2d 492, 494 (7th Cir.1990)). "The Fourteenth Amendment does not protect against all deprivations of liberty." *Baker,* 443 U.S. at 145, 99 S.Ct. 2689. The statutory procedures provide understanding of the circumstances against which the court is to decide whether the defendants violated Rev. Hunt's substantive due process rights, but the statutory procedures do not define Rev. Hunt's substantive due process rights.

As noted above, the *Armstrong* court did much of the heavy lifting involved in analyzing a claim such as this, but did not do it all. The *Armstrong* court, under the first prong of the three-pronged substantive due process analysis, announced the question it sought to answer as follows: "we begin our examination of Armstrong's Fourteenth Amendment claim by asking: Does the Due Process Clause guard against the extended detention, without an appearance before a magistrate, of a civil arrestee who complains about his confinement following a valid arrest pursuant to a body attachment warrant?" 152 F.3d at 571. The *Armstrong* court, of course, examined the case in light of the claim presented: that a 57–day detention on a body attachment without a court appearance violated the Constitution. In the context of such an inquiry, there was no tension between the question articulated by the court and the answer it reached:

> ... the sheriff of Allen County arrested Armstrong with the exceeedingly limited authority to bring him before the Allen circuit court. Without any finding of culpability the municipal authorities pos-

sessed no power to detain Armstrong, nor could they point to any public interest in his detention. Given these facts, the detention of Armstrong for anything more than a brief time preceding his appearance in court represents an affront to substantive due process.

152 F.3d at 576.

*Armstrong,* though, did not involve a detention of a "brief time," and so it offers no definition of the "brief time" in which a sheriff (or the sheriff's deputies) may hold a person on whom a body attachment has been issued. There is no reason to think the court intended to imply a polar choice in which anything longer than "brief" was impermissibly "extended," or that anything shorter than "extended" was permissibly "brief." However the permissibly "brief" detention might be defined, it would be less than 57 days. We may assume it would be less than eighteen days—the time found excessive in *Coleman v. Frantz,* 754 F.2d 719—and it might be markedly less, since *Coleman* involved a criminal warrant. To support Rev. Hunt's claim, though, "brief" would have to be defined as something invariably less than two days or so, even if the two days fall on a holiday weekend. The court does not believe that the Due Process Clause can be said to mandate that limit in light of *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433—a case *Armstrong* teaches us is illustrative even though it involved a criminal warrant and involved the Fourth Amendment rather than substantive due process—which found no violation in a four-day detention on a valid warrant over a holiday weekend.

Fifty-one hours in jail, of course, is anything but brief to the one jailed. This is especially so if the person jailed is unaccustomed to incarceration, and if the person knows others are counting on him to be somewhere else. The court does not mean to diminish what Rev. Hunt felt about the brevity of his imprisonment.

---

**2.** The citations to the Indiana Code refer to the laws in effect when Rev. Hunt was arrest-

ed and detained. The relevant statutes have since been amended and recodified.

The court simply strives to measure Rev. Hunt's detention against the hazy, often inexact yardstick of substantive due process, and concludes that it doesn't measure up to a constitutional violation.

If this is wrong, and the Due Process Clause protects against a 51–hour detention on a body attachment, Rev. Hunt's claim cannot survive the third prong of the test outlined in *Armstrong*—whether the totality of the circumstances are shocking to the conscience. In *County of Sacramento v. Lewis*, 523 U.S. 833, 848–49, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Court explained that test:

> It should not be surprising that the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm .... We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

In light of the Elkhart County Sheriff's statutory duties when Rev. Hunt came into the custody of an assisting sheriff's department,[3] the court suspects that the Elkhart County Sheriff may well be liable to Rev. Hunt on some state law theory of false imprisonment. Even that is not certain, since Indiana has not addressed the immediacy with which a sheriff must act upon learning that a body attachment has been executed. In the context of the culpability spectrum described in *County of Sacramento v. Lewis*, the 48–to–51–hour delay in returning to Rev. Hunt to Elkhart County and then releasing him cannot be said to constitute "behavior at the other end" from simple tort liability.

Perhaps, though, the delay is not firmly at the "simple tort" extreme of the spectrum; perhaps it lies somewhere in the middle. After the portion just quoted from *County of Sacramento*, the Court went on to discuss whether "the point of conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence, but 'less than intentional conduct, such as recklessness or 'gross negligence' ' ...." 523 U.S. at 849, 118 S.Ct. 1708. The Court noted that when jail or prison officials are deliberately indifferent to a pretrial detainee's safety or medical needs, that deliberate indifference is said to shock the conscience since the pretrial detainee is entitled to no less than what the Eighth Amendment guarantees those who have been convicted of crimes. *Id.* at 848–851, 118 S.Ct. 1708.

 It may be that the Elkhart County defendants were deliberately indifferent to Rev. Hunt's statutory right to return to Elkhart County to address the attachment, whether through the posting of bail or through a court appearance. But that is deliberate indifference to a statutory right, not to safety or serious medical needs, and the Eighth Amendment does not protect an inmate from deliberate indifference to statutory rights. Under the test set forth

---

**3.** Ind.Code § 34–4–9–2.1(d) (1996) ("If an assisting sheriff takes a person into custody, he shall notify the sheriff. The sheriff, after notification, shall immediately return the person to the county in which the writ was issued and take the person before the court which issued the writ. However, the sheriff may release the person (1) on bail ....").

in *County of Sacramento*, the detention of Rev. Hunt cannot be said to shock the conscience. Accordingly, the court grants the defendants' motion for summary judgment as to the § 1983 liability of all defendants and denies the plaintiff's converse motion.

## D.

The court voiced suspicion that the county defendants exposed themselves to liability to Rev. Hunt under state law through their conduct. That is nothing more than suspicion: as the court noted, Indiana has not decided the issue even obliquely (much less squarely), and it appears that substantial issues would remain to be decided concerning municipal liability under the Indiana Tort Claims Act. Those are issues that seem best left to the state courts. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999) (*citing Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir.1996) (reminding district courts that there is a presumption against retaining jurisdiction of supplemental state law claims when the federal claims are dismissed before trial), *vacated on other grounds*, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997)). The court, therefore, dismisses without prejudice Rev. Hunt's remaining state law claims against the Sheriff of Elkhart County, John Does one and two, Corporal Jeremy Bigler, Corporal Richard Matteson, Officer J.W. Howard, and one or more jail commanders.

## III.

For the foregoing reasons, the court

(1) DENIES the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. for partial summary judgment as to the liability of the state-action defendants [docket # 83];

(2) GRANTS IN PART the motion for summary judgment of defendants Sheriff of Elkhart County, John Does one and two, Corporal Jeremy Bigler, Corporal Richard Matteson, Officer J.W. Howard, and one or more jail commanders [docket # 119], and orders that all claims of Faith Ministries, Inc. and plaintiff Hunt's § 1983 claims and § 1985 claim are DISMISSED WITH PREJUDICE, and any remaining state law claims are DISMISSED WITHOUT PREJUDICE;

(3) DENIES AS MOOT the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. for partial summary judgment as to the liability of Dr. David L. Cripe [docket # 99];

(4) DENIES AS MOOT the motion for summary judgment of defendant Dr. David L. Cripe [docket # 110];

(5) DENIES AS MOOT the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. to qualify Joseph Molnar as an expert [docket # 92];

(6) DENIES AS MOOT the motion of Reverend Lord M. Hunt and Faith Temple Ministries, Inc. to qualify Richard Zimmerman as an expert [docket # 101];

(7) DENIES AS MOOT the defendants' motion to bar the expert testimony of Richard Zimmerman and Joseph Molnar [docket # 117];

(8) DENIES AS MOOT the plaintiffs' motion for relief from scheduling order as to trial date and preparation [docket # 129]; and

(9) VACATES the April 24, 2000 trial setting, the April 12, 2000 final pretrial conference, and any other deadlines previously set herein.

SO ORDERED.